## Oyler et ux. v. Commonwealth

*John McD. Sharpe*, for plaintiffs.

*Edwin D. Strite*, for Commonwealth.

WINGERD, P. J., April 3, 1950.—Plaintiffs are the owners of certain real estate, part of which was appropriated by the Commonwealth of Pennsylvania in a widening of the Lincoln Highway in Guilford Township, Franklin County, Pa. The Commonwealth offered plaintiffs $800 for damages caused to their farm by reason of the taking of land for and the changing of the grade of the Highway. Plaintiffs demanded $10,000 damages. Plaintiffs petitioned for the appointment of viewers, and the viewers awarded them the sum of $2,-250. This did not satisfy plaintiffs, and they appealed from the board of viewers to the court of common pleas, and the trial resulted in the jury bringing in a verdict in favor of plaintiffs in the amount of $2,900. At no time did the Commonwealth offer plaintiffs any amount in excess of $800 and at no time did plaintiffs offer to settle for an amount less than $10,000.

The Commonwealth offers to pay plaintiffs the verdict of the jury, but takes the position that it is not responsible for the costs and demands that the judgment be marked satisfied on payment of the amount of the verdict. The Commonwealth will not pay the amount of the verdict to plaintiffs unless the judgment taken on the verdict is marked satisfied, and plaintiffs cannot have it marked satisfied unless the costs are paid so, to have the Commonwealth pay the judgment, plaintiffs would have to pay the costs.

Plaintiffs have petitioned the court to determine who is to pay the costs. A rule was issued on the Commonwealth to show cause why the costs should not be paid by the Commonwealth of Pennsylvania. The Commonwealth filed an answer.

The facts which have been stated in reference to the amount which was demanded by plaintiffs and the

amount offered by defendants appear in the petition and answer and may be taken as admitted.

There is no doubt that this court has the power to fix the liability for costs in eminent domain proceedings, such as the present one, for that power is given to it by the Act of June 21, 1939, P. L. 651, sec. 1, 36 PS §2442, and the Supreme Court has held in Tunison v. Commonwealth, 347 Pa. 76, that the costs may be placed on the Commonwealth. There seems to be no hard and fixed rule governing the disposition of costs in a case like the present.

In Tunison v. Commonwealth, supra, the Supreme Court affirmed the action of the lower court in directing the Commonwealth to pay the costs in that case, which was an action for damages caused by the Commonwealth exercising the power of eminent domain, although the Commonwealth on its appeal from the award of the board of viewers succeeded in substantially reducing the amount of the award. In the opinion it is said: "No cogent argument has been advanced why the costs should not follow the verdict and be taxed against the appellant." (Commonwealth)

In Moore et al. v. Commonwealth, 49 D. & C. 211, defendants won an award of $8,100 before the board of viewers, but the Commonwealth appealed and was successful in obtaining a verdict of $5,000. It was stated, however, that at no time did the Commonwealth offer more than $3,000 in settlement. The court said:

"Here admittedly the Commonwealth never offered more than $3,000 in settlement. How were plaintiffs to get the amount of $5,000 which the jury found to be just and reasonable except by prosecuting their suit? The jury's finding a lesser amount of damages than the viewers is not determinative: Addison Borough School District v. Commonwealth, 41 D. & C. 378. There is no warrant in law, aside from statute, for apportioning

costs because a party failed to recover all his claim: Ex parte Petersen, Receiver, 253 U. S. 300.

"Although our statute may authorize an apportionment of costs it would be inequitable to do so in this case. The verdict in the common pleas was less than the award of the viewers, doubtless because the trial judge excluded all damage on account of the closing of the grade crossing and the vacation of the road. Yet plaintiffs' was not an untenable contention; it was honestly made and there was some unfortunate misunderstanding as to the respective scope of the proceedings before the Public Utility Commission and before the viewers which induced plaintiffs to refrain from pressing their claim before the commission." The court placed all costs on the Commonwealth.

In Slaughenhaup v. Commonwealth of Pennsylvania, December term, 1943, no. 45, in this court, in which the Commonwealth offered plaintiff $550, plaintiff obtained an award by the viewers of $1,500 and on appeal obtained a verdict of the jury in the amount of $2,500. Judge Davison, in directing the Commonwealth to pay the costs, said:

"In the instant case how was the plaintiff to get the amount of his damages, found by the jury to be $2500, except by appealing for viewers to assess his damages when the Commonwealth offered him only $550 for the same, and how was he to secure said amount of damages when the viewers allowed him but $1500 but by appealing to this court for a jury trial."

The Commonwealth urges upon this court that plaintiffs never offered to settle for less than $10,000, that at the trial their own witnesses, with the exception of plaintiff, Walter L. Oyler, estimated the damages between $6,000 and $8,000, that plaintiffs' demand was grossly excessive and exorbitant, and that had they been "willing to negotiate in a reasonably fair and

sensible manner, the procedure he (they) took would not have been necessary". Parentheses added. There is nothing before the court to show that the Commonwealth was ever willing to make a higher offer than $800. We cannot see the force of this reasoning because in the ordinary case the mere fact that a plaintiff's demand may be greatly in excess of his recovery does not prevent the costs following the verdict and judgment. It may be true that, if the Commonwealth had at any time actually offered plaintiffs more than their final recovery, there might be some merit in the contention that plaintiffs should pay the costs. However, in this case there is nothing, except conjecture, that if plaintiff had demanded less, the Commonwealth would have offered more. The facts are definite that the Commonwealth never did offer plaintiffs more than $800. Plaintiffs had no other method of obtaining more than $800 than to petition for a view and, if not satisfied with the award of the viewers, to appeal to the court of common pleas. Plaintiffs pursued this procedure and were successful in each instance, which showed clearly that their procedure was reasonable and the incurring of costs in the common pleas was necessary to obtain a proper disposition of their claim. They did only what they had to do to obtain what they did, namely $2,900. Such amount was not made available to them in any other way. We feel as Justice Stearne did in Tunison v. Commonwealth, supra, when he said: "No cogent argument has been advanced why the costs should not follow the verdict . . .".

Now, April 3, 1950, the rule is made absolute, and all the costs are placed upon the Commonwealth of Pennsylvania.